UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00171-LLK

BILLY D. CARROLL, Jr.                                                                    PLAINTIFF

v.

ANDREW SAUL, Commissioner of Social Security                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security Disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets # 15 and 16. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 11.)

Plaintiff identifies several imperfections in the ALJ's written decision. However, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Sec'y of Health & Human Servs.*, 869 F.2d 1055, 1057 (7th Cir. 1989)). The Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint because the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, and Plaintiff's arguments show, at worst, harmless error.

**The ALJ's rejection of Dr. Nathoo's disabling findings did not rise to the level of reversible error.**

The ALJ found that Plaintiff suffers from the following severe, or vocationally significant impairments: degenerative disc disease, osteoporosis, mild carpal tunnel syndrome/neuropathy, headaches, and cervical osteoarthritis. (Administrative Record (AR) at 44.) Plaintiff received treatment for these impairments at Medical Center Neuroscience Services in Bowling Green, Kentucky, where

1

neurosurgeon Narendra Nathoo and advanced practice registered nurse (APRN) Kim Haynes work.[1] APRN Haynes described Plaintiff as a "patient of Dr. Nathoo." (AR at 606.)

On February 14, 2018, apparently at Plaintiff's request, APRN Haynes completed the Physical Medical Source Statement form. (AR at 844-47.) On March 7, 2018, Dr. Nathoo endorsed APRN Haynes' findings. (AR at 872.)[2]

Dr. Nathoo made five findings, any one of which, if accepted, would be intolerable to most employers and would render Plaintiff disabled. Specifically, Dr. Nathoo found that Plaintiff would likely: 1) Be able to sit for a maximum of less than 2 hours total in an 8-hour working day and stand/walk for less than 2 hours total in an 8-hour working day; 2) Need to take unscheduled rest breaks during a working day every 15 to 20 minutes, which would last (on average) for 15 to 30 minutes; 3) Be "off task" (due to effects of symptoms on attention and concentration to perform even simple work tasks) 25 percent of the workday; 4) Be incapable of even "low stress" work; and 5) Be absent from work as a result of impairments or treatment more than 4 days per month. (AR at 869-72.)

---

[1] http://www.bgneurosurgery.com/our_providers.aspx

[2] The Court considers the joint statement of Dr. Nathoo and APRN Haynes to be tantamount to the medical opinion of Plaintiff's treating physician, Dr. Nathoo. The Commissioner argues that Dr. Nathoo should not be considered as a treating source because "in over 900 pages of this administrative transcript, there is not a single treatment note from Dr. Nathoo." (Docket # 16 at 18.) The argument is unpersuasive in light of the close working relationship between APRN Haynes and Dr. Nathoo.

The Commissioner correctly observes that APRNs are not considered to be acceptable medical sources. (Docket # 16 at 17.) However, this is immaterial in light of Dr. Nathoo's endorsement of APRN Haynes' findings. *See Smith-Johnson v. Comm'r*, 579 F. App'x 426, 435 (6th Cir. 2014) ("Although Smith-Johnson takes issue with the consideration of Koopman's report because she is not an 'acceptable medical source,' she makes no attempt to explain why a report that is co-signed by an acceptable medical source (a licensed psychologist) cannot be considered."); *see also Ball v. Comm'r*, No. 2:18-cv-376, 2019 WL 3071852, at *4 (S.D. Ohio July 15, 2019) (collecting authorities for the proposition that, under the law, there is no difference between opinions filled out and signed by a treating physician and opinions filled out by another source and then signed – thus adopted – by the treating physician).

While recent changes to the regulations now include APRNs among the list of "acceptable medical sources," the changes are expressly not retroactive. See 20 C.F.R. § 404.1502(a)(7) ("Acceptable medical source means a medical source who is a[n] ... [APRN] ... for impairments within his or her licensed scope of practice ... only with respect to claims filed ... on or after March 27, 2017."). Plaintiff filed his claims in 2015. (AR at 41.)

The ALJ gave "minimal weight" to Dr Nathoo's disabling findings because 1) they "are inconsistent with the record as a whole," 2) APRN Haynes' "own examination findings fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact significantly limited and disabled, and she did not specifically address this weakness," and 3) the findings contrast "sharply with and [are] without substantial support from the other evidence of record, which renders [them] less persuasive." (AR at 49-50.) Additionally, the form asked APRN Haynes to "[a]ttach relevant treatment notes, radiologist reports, laboratory and test results as appropriate," and APRN Haynes attached the results of MRIs of Plaintiff's lumbar and cervical spine from August 2017. (AR at 858.) The ALJ noted that the lumbar MRI showed only "mild degenerative changes at the L/S1 level without evidence of direct neural impingement" and "mild narrowing of the left neural foramen at the L5/S1 level." (AR at 47 quoting AR at 858.) MRIs showing "mostly mild-to-moderate findings and no significant degeneration" are generally consistent with an ability to perform light work. *Downs v. Comm'r*, 634 F. App'x 551, 553 (6th Cir. 2016).

A treating physician's (e.g., Dr. Nathoo's) opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). Dr. Nathoo's disabling findings were not entitled to controlling weight because they were not "well-supported." Where (as here) the ALJ did not give the treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given the opinion in light of the factors at Section 404.1527(c)(1) – (6). There is no allegation or evidence that the ALJ abused his discretion in discounting Dr. Nathoo's disabling findings in light of these factors. Additionally, the ALJ was justified in discounting Dr. Nathoo's disabling findings because they were given on a "check-off form of functional limitation that did not cite [supporting] clinical

3

test results, observations, or other objective findings." *Ellars v. Comm'r*, 647 Fed App'x 563, 566 (6th Cir. 2016). ALJs "may properly give little weight" to such findings. *Id.*[3]

**The ALJ's giving "some weight" to Dr. Reed's findings did not rise to the level of reversible error.**

In September 2015, the Commissioner's state-agency program physician, Jack Reed, reviewed the available medical evidence and opined that Plaintiff retains the ability to perform a limited range of medium work. (AR at 128-29.) The ALJ, in support of his finding that Plaintiff can perform a limited range of light work, gave "some weight" to Dr. Reed's opinion. (AR at 49.) Plaintiff argues that "there is concern that substantial evidence may not support" Dr. Reed's opinion because Dr. Reed could not have been aware of the medical evidence after September 2015, including the August 2017 MRI evidence discussed above. (Docket # 15 at 5.)

The argument is unpersuasive because the ALJ's written decision considered the subsequent medical evidence and acknowledged that it supported **greater** limitations than found by Dr. Reed (i.e., Plaintiff is limited to light as opposed to medium work). *See McGrew v. Comm'r*, 343 F. App'x 26, 32 (6th Cir. 2009) (rejecting argument that ALJ erred in relying on program physician's opinion that was based on an incomplete record where the ALJ took into account the subsequent medical evidence).

**The ALJ's evaluation of Plaintiff's cane use did not rise to the level of reversible error.**

Dr. Nathoo found, among other things, that Plaintiff's impairments require that he use a cane or other hand-held assistive device when "standing/walking" due to imbalance and weakness and that he "has to have [an] ambulatory device to help with balance." (AR at 871-72.) The ALJ found that Plaintiff "requires a hand-held assistive device for uneven surfaces and prolonged ambulation." (AR at 45.) In so

---

[3] Admittedly, the ALJ's weighing of Dr. Nathoo's findings was imperfect in three respects. First, the decision did not specifically recognize that Dr. Nathoo was Plaintiff's treating physician and that he signed off on APRN Haynes' findings. Second, the decision did not explicitly analyze Dr. Nathoo's findings in light of the regulatory factors at Section 404.1527(c)(1) – (6). Third, the decision did not discuss the August 2017 cervical MRI results at AR 855, which APRN Haynes attached to the form. Like the lumbar MRI, the cervical MRI showed mostly mild-to-moderate findings and no significant degeneration. There is no allegation or evidence that correction of these imperfections might lead to a different result.

4

finding, the ALJ implicitly rejected Dr. Nathoo's suggestion that Plaintiff may also need a cane for standing (i.e., "standing/walking").

The ALJ asked the vocational expert (VE) to assume an individual who, among other things, "requires the use of a handheld assistive device for uneven surfaces and prolonged ambulation" but can nevertheless occasionally overhead reach and frequently handle and finger "with the bilateral upper extremities." (AR at 99-100.) The VE testified that such an individual can perform jobs such as cashier, ticker taker, and inspector. (AR at 100-01.) Because it would be difficult to impossible for an individual to walk while holding onto a cane with one hand and occasionally overhead reach and frequently handle and finger "with the bilateral upper extremities,"[4] the VE implicitly found that the jobs in question do not require prolonged ambulation.

There is no allegation or evidence that Plaintiff requires a cane when standing or that the jobs the ALJ found Plaintiff can perform require prolonged ambulation.

**Certain statements in the ALJ's decision did not rise to the level of reversible error.**

Finally, Plaintiff objects to two statements in the ALJ's written decision. First, the ALJ stated that Plaintiff "reported being the caretaker for his father with Alzheimer's disease, which suggests that his alleged symptoms and limitations allow for this responsibility and duties." (AR at 48 referencing AR at 900.) Second, the ALJ stated that there is a "reasonable inference" that Plaintiff "stopped working due to a business-related layoff rather than the allegedly disabling impairments." (AR at 50.)

In context, it is apparent that these statements were merely gratuitous, passing observations, which had little to no bearing on the ALJ's ultimate finding of lack of disability. There is no indication that

---

[4] Additionally, it would be difficult to frequently carry (walk with) 10-pound objects while grasping a cane. The hypothetical contemplated an ability to perform light work. (AR at 99.) The full range of light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Because "frequent" means "occurring from one-third to two-thirds of the time," the full range of light work contemplates an ability to carry 10-pound objects "off and on, for a total of approximately 6 hours of an 8-hour workday," with sitting occurring "intermittently during the remaining time." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6.

the ALJ based his finding that Plaintiff can perform a limited range of light work on his caretaking. The ALJ merely stated the obvious, i.e., the caretaking shows that Plaintiff's impairments "allow for this responsibility." It is not of case-dispositive significance whether Plaintiff was physically and mentally capable of continuing to work when he stopped working due to a business layoff because the ALJ found that Plaintiff is unable to perform any past relevant work. (AR at 50.)

## Order

Because the ALJ's decision is supported by substantial evidence and Plaintiff's arguments show, at worst, harmless error, the Commissioner's final decision is hereby AFFIRMED and Plaintiff's complaint is DISMISSED.

July 22, 2019

Lanny King, Magistrate Judge
United States District Court